IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. |
| LUBIN LOGISTICS COMPANY, | JURY TRIAL DEMAND |
| Defendant. | |

# COMPLAINT

This is an action under the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Andre Bentley, who was adversely affected by the unlawful employment practices. The Equal Employment Opportunity Commission (the "Commission" or the "EEOC") alleges that Defendant Lubin Logistics Company discriminated and retaliated against Bentley when it terminated his employment because of his disability and his request for an accommodation related to his disability.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 (the "ADA"), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3. Plaintiff, the EEOC, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. Defendant Lubin Logistics Company is a corporation organized under the laws of the State of Georgia.

5. At all relevant times, Defendant Lubin Logistics Company has continuously been doing business in the State of Georgia and has continuously had at least 15 employees.

6. At all relevant times, Defendant Lubin Logistics Company has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7).

7. At all relevant times, Defendant Lubin Logistics Company has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

8. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

9. Defendant has engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. §§ 12112(a), (b), and (d), since on or about November 2021, when Defendant discriminated and retaliated against Bentley by terminating his employment.

10. Bentley is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Bentley suffers from Lupus, an autoimmune disease that causes pain and inflammation throughout the

body, which can be triggered by stimuli such as cold weather. Bentley's Lupus is an impairment that substantially limits one or more major life activities, such as the functions of his immune system.

11. Defendant is a package delivery company founded in 2018.

12. Defendant primarily operates as a contractor of the international shipping brand FedEx, and bases its operations out of a Norcross, Georgia delivery terminal.

13. In or around November 2021, Bentley sought employment with Defendant as a package delivery driver.

14. Defendant responded to Bentley's application for employment by offering him the position and requesting that he undergo a medical examination prior to beginning his employment.

15. Bentley successfully completed his medical examination and reported to work for Defendant on or about November 12, 2021.

16. The same day, Bentley informed the General Manager and Assistant Manager of his Lupus. At the time, Bentley did not request any workplace accommodation related to his disability.

17. Neither the General Manager nor the Assistant Manager expressed any concern about Bentley's Lupus. Indeed, the General Manager told Bentley that he "understood" the condition because of a family member's Lupus diagnosis.

18. As is typical for newly hired drivers, Defendant initially assigned Bentley to a training period in which he worked as a "jumper," a position in which Bentley was tasked with delivering packages from a truck driven by another driver.

19. Upon successful completion of work as a "jumper," Bentley was poised to transition into a driver role.

20. Bentley successfully performed his role as a "jumper" for multiple shifts prior to his leaving for a pre-scheduled, pre-approved vacation on or about November 19, 2021.

21. Bentley returned to his role on or about November 26, 2021, when he was scheduled to work as a "jumper" from 7:00 AM until all packages assigned to his truck that day had been delivered.

22. The delivery truck to which Bentley was assigned that day had a malfunctioning door that did not completely shut, had a malfunctioning passenger seat on which Bentley could not properly sit, and lacked cabin heating.

23. Because of delays caused by the driver of the truck, Bentley's shift was on pace to run longer than its typical length of time.

24. Bentley's lengthy exposure to cold weather and inability to properly sit caused a "flare-up" of his Lupus, which included severe pain in his legs and feet.

25. Late in the day, Bentley contacted the Assistant Manager to request permission to return to the delivery terminal because of the pain caused by his Lupus flare-up.

26. The Assistant Manager gave Bentley permission to return to the terminal and sent a driver to escort him.

27. Bentley returned to the terminal and concluded his shift, as permitted.

28. Bentley was next scheduled to work on or about November 28, 2021.

29. The night before his shift, Bentley received a text message from the Assistant Manager telling him that there was "no need" for him to come in because of the low number of delivery routes scheduled for the day. The Assistant Manager instructed Bentley to "relax and recover."

30. On or about November 29, 2021, the Assistant Manager sent Bentley a text message stating that "due to your medical condition which physically limits you we can't continue to have you work for us." The Assistant Manager explained that "this job is only going to get tougher over the next 6 weeks, because of the holiday season."

31. Bentley responded to the Assistant Manager with disbelief, noting that he had performed well in his role.

32. Bentley requested that he not be fired and that he alternatively be permitted to work as a package loader, as he had not had any issues loading boxes onto trucks.

33. Neither the Assistant Manager nor any other person employed by Defendant ever responded to Bentley's inquiries about keeping his current role or about working as a package loader.

### *Disability Discrimination*

34. Bentley is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12101 and 1211(8):

   a. Bentley has an impairment, Lupus, which substantially limits one or more of his major life activities, including but not limited to the operation of major bodily functions of his immune system.

   b. Defendant regarded Bentley as having a disability by subjecting him to adverse employment actions, including the termination of his employment, because of actual or perceived impairments related to Lupus. When terminating Bentley's employment, Defendant stated its

        awareness that Bentley suffered from Lupus and its belief that his medical condition physically limited him.

    c. At all times relevant to this action, Bentley was qualified to perform the essential functions of the job of a driver and of a jumper, with or without a reasonable accommodation.

35. Defendant terminated Bentley from his driver-track position because of his disability, what Defendant regarded as his disability, and/or a perception that Bentley's disability or perceived disability would require accommodation.

36. The unlawful employment practices complained of in paragraphs 29 to 33 were intentional.

37. The unlawful employment practices complained of in paragraphs 29 to 33 were done with malice or with reckless indifference to the federally protected rights of Bentley.

### *Retaliation*

38. Bentley engaged in activity or expression protected by the ADA on or about November 26, 2021, when he requested an accommodation for his disability. Specifically, Bentley engaged in statutorily protected activity or expression when he requested and received permission to end his shift early because of a Lupus flare-up, as described in paragraphs 25 to 27.

39. Defendant terminated Bentley from his driver-track position because of his statutorily protected activity or expression.

40. The unlawful employment practices complained of in paragraphs 29 to 33 were intentional.

41. The unlawful employment practices complained of in paragraphs 29 to 33 were done with malice or with reckless indifference to the federally protected rights of Bentley.

## PRAYER FOR RELIEF

WHEREFORE, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all other persons in active concert or participation with it, from failing to hire applicants because of their disabilities.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of its past and present unlawful employment practices.

C. Grant a judgment requiring Defendant to pay appropriate back wages, in an amount to be determined at trial, and prejudgment interest to Bentley.

D. Order Defendant to make whole Bentley, by providing the affirmative relief necessary to eradicate the effects of its unlawful practices, including but not limited to an offer of employment or front pay in lieu of such an offer.

E. Order Defendant to make whole Bentley by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described in paragraphs 29 to 33, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Defendant to pay Bentley punitive damages for their malicious and reckless conduct, as described in paragraphs 29 to 33 above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the EEOC its costs in this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

MARCUS G. KEEGAN
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Assistant Regional Attorney

ROBYN M. FLEGAL
Supervisory Trial Attorney

*/s/ Fahad A. Khan*
Fahad A. Khan
Trial Attorney
Georgia Bar No. 442892
fahad.khan@eeoc.gov

U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, GA 30303
(470) 531-4811
(404) 562-6905 (facsimile)